ISAAC MACHOVER and LOLA MACHOVER

v.

ABDRHMIN ABDALLAH and MENRAH ABDALLAH
MOHAMMED ABDALLAH, Appellant

# No. 14,341

## United States Court of Appeals
### Third Circuit

## Argued at Charlotte Amalie January 28, 1964
## Decided April 3, 1964

*See, also, 329 F.2d 800*

George H. T. Dudley, Esq. (Dudley, Hoffman & Grunert), Charlotte Amalie, St. Thomas, Virgin Islands, *for appellant*

WILLIAM H. D. COX, ESQ. (COX & BORNN), Charlotte Amalie, St. Thomas, Virgin Islands, *for Abdrhmin Abdallah and Menrah Abdallah*

DAVID E. MAAS, ESQ. (MAAS & IRELAND), St. Thomas, Virgin Islands, *for Isaac Machover and Lola Machover*

Before MARIS, STALEY and ALDRICH, *Circuit Judges*

MARIS, *Circuit Judge*

Mohammed Abdallah has appealed from an order of the District Court of the Virgin Islands directing him to vacate a store on the ground floor of premises No. 2 Dronningensgade in the Queen's Quarter of the town of Charlotte Amalie, St. Thomas, in which he is carrying on a business known as the "Holy Land Store", and to deliver possession of the store to the plaintiffs, Isaac Machover and Lola Machover, his wife. The order was entered in a suit between the plaintiffs and Abdrhmin Abdallah and Menrah Abdallah, his wife, as defendants, in which the plaintiffs sought and obtained a judgment for specific performance of an agreement dated December 30, 1959 for the sale of premises No. 2 Dronningensgade by the defendants to the plaintiffs. The judgment of the district court directing specific performance of the agreement of sale was affirmed on appeal by this court. Machover et al. v. Abdallah et al., 1962, 4 V. I. 353, 297 F.2d 938. By deed dated April 18, 1962 the defendants made the conveyance ordered by the judgment of the court.

On December 9, 1959, three weeks before the agreement of sale was signed and before any negotiations for the agreement had begun, defendant Abdrhmin Abdallah gave his nephew Mohammed Abdallah, the appellant, a written lease of the ground floor of the premises No. 2 Dronningensgade, which was occupied by the Holy Land Store, for a term of five years from January 1, 1960. It appears that the uncle desired to retire from business, sell his property

and return to Palestine to live, which, it was stated at bar, he subsequently did.

In the course of the subsequent negotiations for the agreement of sale Abdrhmin Abdallah, through his agent Osmond Kean, urged that his nephew be permitted to stay on the premises as a tenant for five years but Isaac Machover insisted that he should have a lease for not more than two years. The agreement as signed so provided.

The appellant learned of the sale shortly after the agreement was signed. On the same day Isaac Machover came by to look at the property and the appellant, who was then in the store, asked him whether he had bought the property and, upon being told by Machover that he had, informed him, as the district court found, that he, Mohammed Abdallah, had papers on the property. Machover, however, walked away without inquiring as to Mohammed Abdallah's interest or the nature of the "papers", although as he later admitted in his testimony he knew that Mohammed Abdallah was a tenant. His explanation was that he had no reason to make such inquiry because of the agreement with the defendants that the nephew was to have a two years lease only.

A few days after the appellant learned of the sale his uncle showed him the agreement and asserted that he had been tricked into signing it, having intended to sell another property. The appellant took his uncle to a lawyer who prepared a letter which the uncle sent to Machover renouncing the agreement. About the same time the appellant consulted the same lawyer about his rights under the lease of December 9, 1959 in view of the sale. He was advised to have the lease recorded and this was done on January 12, 1960. Meanwhile on January 11, 1960 Isaac and Lola Machover brought the present suit for specific performance against Abdrhmin and Menrah Abdallah and on the same day filed in the office of the recorder of deeds a notice of lis pendens.

As we have said, the district court ultimately entered judgment for the plaintiffs which was affirmed by this court on appeal, and on April 18, 1962 the defendants executed a deed of conveyance to the plaintiffs as directed by the judgment.

Following the conveyance thus made the appellant continued in possession of the portion of the premises occupied by the Holy Land Store, claiming the right to do so until December 31, 1964 under the lease of December 9, 1959. The plaintiffs thereupon procured from the district court an order upon the appellant, who had not theretofore been a party to the suit, to show cause why his purported lease should not be declared void. They also asked the court to order the appellant to vacate the property and turn possession thereof over to the plaintiffs. Answers were filed by the appellant and the defendants and, after hearing, the district court ordered the appellant to vacate the premises and deliver possession thereof to the plaintiffs. The present appeal followed.

The district court's action was based upon its conclusions (1) that the plaintiffs had exercised good faith by making such an investigation as reasonably prudent people would do under the circumstances and were not estopped from exercising their rights under the contract of December 30, 1959 to have possession of the store on January 2, 1962, and (2) that the appellant, having done nothing before or after December 30, 1959 to call attention to the lease of December 9, 1959, did not exercise good faith and was, therefore, estopped from claiming any rights under the lease of December 9, 1959 against the plaintiffs. We think that the court erred in both conclusions.

 It is a rule of the common law that possession of real property is notice to the world of every right that the possessor has therein; it is a fact putting all persons on in-

quiry as to the nature of the occupant's claim.[1] The rule is applicable to the rights of a tenant in possession.[2] Accordingly it has been held that purchasers of real estate are affected not only by matters of which they have actual knowledge and by what appears of record but also "by what they could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect the title". Sidle v. Kaufman, 1942, 345 Pa. 549, 557, 29 A.2d 77, 82.

■ In the present case Machover visited the premises, found the appellant in possession of the store, was told by the appellant that he had "papers" on the property, but walked away without making any inquiry as to the nature or extent of the appellant's interest under the papers which he had said he possessed. And Machover did so in spite of the fact that he knew, as he admitted on the witness stand, that the appellant was a tenant, and also in spite of the fact that in the negotiations Kean had urged him to agree to a five years lease for the appellant. We are clear that under these circumstances the plaintiffs are chargeable, as a matter of law, with constructive notice of all that a reasonable inquiry would have disclosed.

■ Machover seeks to excuse his failure to make inquiry by asserting that he placed his entire reliance upon the agreement of December 30, 1959 with Abdrhmin and Menrah Abdallah under which it was stipulated that the appellant was to have a lease for two years only. It may well be that the plaintiffs have a right of action against Abdrhmin and Menrah Abdallah by reason of their breach of that agreement in failing to procure the surrender by

[1] Kirby v. Tallmadge, 1896, 160 U.S. 379, 384, 40 L.Ed. 463, 465; 39 Am. Jur., Notice, §§ 18, 20; 55 Am. Jur., Vendor and Purchaser, §§ 712, 716; American Law of Property, Vol. IV, § 17.12; Tiffany, Real Property, 3d ed., Vol. 5, § 1287.

[2] Pond v. Goldstein, 9 Cir. 1930, 41 F.2d 76, 80; 32 Am. Jur., Landlord and Tenant, § 18; 55 Am. Jur., Vendor and Purchaser, § 720; 92 C.J.S. Vendor and Purchaser § 349(d).

the appellant of possession of the leased premises at the end of the two years period. But inquiry of them, whose interest it was to conceal the true state of facts, was manifestly insufficient to bind the appellant, who was not a party to the agreement and whose possession is under a lease which antedated it.[3]

■ The fact that the plaintiffs recorded a notice of lis pendens on the day they instituted their suit is immaterial here. For the doctrine of lis pendens applies to purchasers and encumbrancers who acquire pendente lite their interests in the property which is the subject of the litigation, not to those who have acquired their interests before the action was brought.[4] The latter will ordinarily not be bound by the judgment entered in the suit unless made parties to the action.[5] Likewise the fact that the appellant did not record his lease until after the suit was brought is immaterial. For, as we have seen, his possession of the leased property and his expressed claim of rights therein were sufficient to put the plaintiffs on notice that he had rights in the property and rendered the recording of the lease of no significance so far as they were concerned.

Since the appellant is entitled under the lease of December 9, 1959 to possession of the leased premises until December 31, 1964, when the lease expires, the district court erred in ordering him to vacate prior to that date.

The order appealed from will be reversed.

[3] 55 Am. Jur. Vendor and Purchaser § 733.

[4] Commonwealth v. Kelly, 1936, 322 Pa. 178, 185, 185 A. 307, 310; Wilkin v. Shell Oil Co., 10 Cir. 1951, 197 F.2d 42, 49; 34 Am. Jur. Lis Pendens § 22; 54 C.J.S. Lis Pendens § 1; American Law of Property, Vol. III, § 13.12, Vol. IV, §§ 17.11, 18.84.

[5] H. Abraham & Son v. Casey, 1900, 179 U.S. 210, 45 L.Ed. 156; 34 Am. Jur., Lis Pendens § 12.