CHESTER &c. R. R. COMPANY v. MARSHALL.

1. REVIVAL OF JUDGMENTS—GOVERNING STATUTE.—The lien of a judgment obtained in 1879 is governed by the act of 1873 (15 Stat., 498), then of force, and, therefore, could be revived at any time within thirteen years of its original entry.

2. IBID.—EXECUTOR OF DEBTOR.—Under the statute authorizing proceedings to revive a judgment by service of a summons on the "debtor, as provided by law," and the renewal of an execution by the service of a summons on the "judgment debtor, his heirs, executors, or administrators," a judgment may be revived under summons to show cause issued to, and served upon, the executor of the judgment debtor, then deceased, the word "debtor" as first used being a generic term and inclusive of a debtor in his representative capacity.

Before WALLACE, J., Lancaster, February, 1893.

This was a proceeding by the Chester and Cheraw Railroad Company against James T. Marshall, as executor of John W. Marshall, deceased, to revive a judgment obtained by the railroad company against the said John W. Marshall in his lifetime.

*Messrs. R. E. & R. B. Allison*, for appellant.

*Mr. Ira B. Jones*, contra.

November 13, 1893. The opinion of the court was delivered
by

MR. JUSTICE MCGOWAN. It seems that the plaintiff com-
pany, on or about September 29, 1879, entered a judgment for
$200 and costs against one John W. Marshall, who was then
living; but he departed this life April 16, 1887, leaving in full
force a will, of which James T. Marshall qualified as executor;
and afterwards, on December 10, 1891, the plaintiff company
caused to be issued against James T. Marshall, as executor as
aforesaid, a summons to show cause, if any he could, why the
said "judgment should not be revived and renewed against him
as the executor of the last will and testament of the said John
W. Marshall, deceased, according to the form, force, and effect
of the former recovery." James T. Marshall, the executor,
showed for cause by written answer as follows: "(1) That no
such judgment as that described above was ever entered against
the defendant as such executor.    (2) That this is not the proper
proceeding to procure the entry, revival or renewal of a judg-
ment against the defendant as such executor, or against John
W. Marshall, defendant's testator.    (3) That if it is sought
herein to revive a judgment entered against John W. Marshall,
defendant's testator, in favor of the Cheraw and Chester Rail-
road Company, on or about September 26, 1879, as described in
the summons herein, then this defendant shows that such judg-
ment was originally entered more than ten years previous to
the service of the summons herein, and that the same can not
now be revived in this proceeding or otherwise.    (4) That the
said judgment has been paid," &c.

Upon the hearing, his honor, Judge Wallace, dismissed the
rule in the following order: "After hearing the return by the
said executor, and it appearing that the said judgment debtor
was dead at the time of the issuance of the summons herein,
and after hearing argument of counsel, it is considered and
adjudged by the court, that there is no provision in the act of
1873 for service of summons to revive judgment on the executor

of the judgment debtor; and it appearing that the said judgment was obtained on the 26th of September, 1879, and must be revived, if at all, under the act of 1873; therefore, on motion, it is ordered and adjudged, that good cause has been shown why said judgment should not be revived, and that said summons or rule be dismissed," &c.

The plaintiff company appeals from this order upon the following grounds: "*First.* Because the Circuit Judge, it is respectfully submitted, erred therein in holding that there is no provision in the act of 1873 for service of summons to revive judgment on the executor of the judgment debtor. *Second.* Because he erred therein in ruling that said judgment, being obtained on September 26, 1879, must be revived, if at all, under the act of 1873, and that it cannot be revived thereunder. *Third.* Because he erred in not holding that said judgment, obtained at the time named, could be revived under the act of 1873 by service of summons on James T. Marshall, as executor of the last will and testament of John W. Marshall, deceased, the said John W. being then dead. *Fourth.* Because he erred in holding that there was no law for the revival of a judgment, recovered at the time mentioned, except the act of 1873, and that this act was defective in that it contained no provision for the service of a summons to revive on the executor of a deceased judgment debtor. *Fifth.* Because he erred in ruling that the act of 1885, and other acts subsequent to 1873, were no authority to authorize the service of the summons on the executor of the judgment debtor. *Sixth.* Because he erred in holding that there was no law or authority for the revival of said judgment in the courts of this State. *Seventh.* Because the judge erred in concluding that good cause was shown why said judgment should not be revived, when no evidence was offered against the judgment, and no showing made to counteract the record of same. *Eighth.* Because the judgment being good, and no payments on the same, it is unjust in the executor, James T. Marshall, to resist its enforcement, and he should be made to pay the costs of this litigation," &c.

As we understand it, there are but two questions in the case: *First.* Was the rule to *revive* the judgment and *renew* the execu-

tion made in time? The judgment was rendered after 1873, and while the act of that date was the law as to judgments and executions, it gave to a judgment *a lien for ten years* from the date of its entry, with this supplemental provision: "*Provided, however,* That the plaintiff may, at any time in *three years* after its active energy has expired, *revive* the judgment, with like lien as in the original, for a like period, by service of a summons on the debtor, as provided by law," requiring him to show cause, &c. This provision was *omitted* in the act of 1885, which was before the ten years of plaintiff's lien had expired; but this court has held that the latter act (1885) was not intended to apply to judgments previously obtained; and, therefore, as we think, the plaintiff had three years in addition to the original *ten* within which to make application to revive their judgment, and that carried the right down to September, 1892, and before that time, viz., on December 10, 1891, the rule to show cause, &c., was filed. So that the rule was in time. *King* v. *Belcher,* 30 S. C., 381; *Ex parte Witte Brothers,* 32 *Id.,* 226.

*Second.* But the judge further held, that, as the judgment could only be *revived* under the act of 1873, and as that made no provision for the service of summons on the executor of the judgment debtor, there was no authority whatever for reviving the judgment against the executor. It is true, that the act (1873) in the section we are considering, does not, in express terms, give the right to serve summons to revive a judgment on the executor of a deceased defendant in execution; nor, as to that matter, does it expressly give the right to the executor of a creditor, in the case of his death, to issue such a summons. But we can not suppose that the law-makers, in the very act of giving the right to revive, intended to deny it, in all cases, where either party to the record was dead. On the contrary, we cannot doubt that, properly construed, the act does substantially give the right. The words are, "by service of a summons *on the debtor.*" Now it seems to us that, in view of the manifest intention, the word "*debtor*" was here used as a *generic term,* in condensed and general form, to embrace all proceedings necessary to carry into effect the interest

on that side, on the familiar principle that, upon the death of
a party, his rights or obligations devolve on his personal rep-
resentatives.    This was not an original proceeding against the
executor individually, but a step in regard to an obligation
incurred by the testator in his lifetime.    Besides, what mean-
ing should be given to the words which immediately follow,
"By service of a summons on the debtor, as provided by law?"
It can not be supposed that the words, "as provided by law,"
were used without some purpose, and it could not have been
considered necessary simply to declare that the manner of ser-
vice on the debtor should be legal, for that was involved in the
requirement itself.    But it may have been considered proper
to use an expression so comprehensive, "as provided by law,"
in order to meet some such state of facts as has occurred here,
in the death of the defendant in execution, making it necessary
to revive the judgment against his executor, "as required by
law."

The same act of 1873 not only contains the provision we
have been considering, as to "reviving judgments," which is
310 of the Code, but also another provision as to the renewing
of executions, which is now 311 of the Code.    It will be ob-
served as to "service on the debtor," these two provisions are
identical, except for the phrase in 310, *"as provided by law,"* is
substituted in 311, that of "his heirs, executors, and adminis-
trators."    We can not conceive a reason for allowing an execu-
tion to be renewed, if the judgment on which it issued could
not be revived.    "The judgment and execution on it are very
closely connected.    The execution is only process to enforce
the judgment, and it can not have active energy unless the
underlying judgment has a lien.    The questions as to them
are in one sense identical.    The claim to renew the execution
necessarily involves the right to revive the judgment."    See
*Adams* v. *Richardson,* 32 S. C., 139 ; *Leitner* v. *Metz, Ibid.,* 387 ;
*Bolt* v. *Dawkins,* 16 *Id.,* 198.

The judgment of this court is, that the judgment of the Cir-
cuit Court be reversed, and the case remanded to the Circuit
Court for such further proceedings as may be deemed proper.